[Civ. No. 5483.    Fourth Dist.    Oct. 7, 1957.]

W. C. JACOBSEN, as Director of Agriculture, etc., Appellant, v. DAIRY MART FARMS, INC. (a Corporation), Respondent.

Edmund G. Brown, Attorney General, and Delbert E. Wong, Deputy Attorney General, for Appellant.

James B. Abbey and Jack L. Oatman for Respondent.

MUSSELL, J.—This is an action for injunctive relief and to recover civil penalties for alleged violations of chapter 17, division 6, of the Agricultural Code. Plaintiff alleges that the defendant, a licensed milk distributor, offered to sell fluid milk below the minimum established price in violation of section 4361 of the Agricultural Code and certain administrative rules and regulations; that the said violations occurred when the defendant submitted bids to five school districts in which it offered to sell, in connection with the sale of fluid milk, certain dairy products below defendant's costs. Plaintiff sought an injunction pursuant to section 4256 of the Agricultural Code to restrain the defendant from selling or offering to sell, in connection with the sale of fluid milk, any dairy products below cost; from paying or allowing any unearned discounts in the sale of fluid milk by offering to sell in connection therewith dairy products below cost; and from delivering any fluid milk or dairy products pursuant to any bids which contain any offer to sell dairy products below cost in violation of chapter 17, division 6, of the Agricultural Code and administrative provisions. In counts two to six it was alleged that the defendant was liable for civil penalties of $500 on each count.

The trial court found that defendant did sell or offer to sell fluid milk and certain other dairy products to various school districts, at the times and at the prices as alleged in the complaint, as amended, but that said defendant did not sell or offer to sell fluid milk at less than the minimum established price or any other dairy products at below the defendant's cost, and that the commodities or any of them sold or

offered for sale by said defendant, as alleged in said complaint, did not result or threaten to result in any offer or offers to sell fluid milk at less than the minimum established price.

The trial court rendered judgment that plaintiff take nothing by this action. Plaintiff appeals from the judgment, contending (1) That the finding of the court that the defendant did not sell nor offer to sell any dairy products at prices below its cost is not supported by substantial evidence; (2) That defendant's offer to sell dairy products below cost in connection with the offer to sell fluid milk resulted in an offer to sell fluid milk below the minimum established prices; and (3) That a hearing under section 4175 of the Agricultural Code was not a condition precedent to the institution of this action.

It is agreed by the parties hereto and established by the record that this action was brought and defendant was charged under the provisions of chapter 17, division 6, of the Agricultural Code, sections 4200 et seq. Under the provisions of this chapter, the Director of Agriculture is authorized to formulate marketing plans for areas designated by him and to prescribe minimum prices to be paid by distributors in accordance with said marketing plans. (Agr. Code, §§ 4245, 4246, 4270.) The boundaries of the San Diego Marketing Area were fixed by the Director of Agriculture by general order number 35, which became effective November 20, 1937, and by San Diego County order number 45, effective January 1, 1954, he established minimum prices for fluid milk in the area.

Defendant offered to sell fluid milk in its bids to five school districts at the minimum prices so established and also offered to sell other dairy products. It is plaintiff's contention that the prices at which the defendant offered to sell the other dairy products were below its cost and since the offers were made in connection with the sale of fluid milk, each transaction resulted in an offer to sell fluid milk at less than the established minimum prices, in violation of section 4361 of the Agricultural Code, which prohibits any distributor from selling fluid milk below the established prices or from using or attempting to use any method, device or transaction whereby any distributor sells or offers to sell to any consumer fluid milk or fluid cream at a price less than that established by the director, whether by discount, rebate, free service, advertising allowances or gift, or otherwise and whether any such discount, rebate, free service or gift applies directly to fluid

milk or fluid cream or is allowed upon or in connection with the sale or handling of any other commodity or product.

Plaintiff further contends that the defendant violated section 2020 of subchapter 3, chapter 3, title 3 of the California Administrative Code, which provides, in part, as follows:

"No distributor or retail store shall engage in any of the following practices in connection with the sale of fluid milk or fluid cream where such practices result in the sale of fluid milk or fluid cream below the minimum prices established by the Director:

"  .    .    .    .    .    .    .    .    .    .    .    .    .

" (d) The sale of any dairy products at less than cost. 'Cost' as used herein means the cost of raw product plus all costs of manufacturing, processing, handling, sale, delivery, and overhead."

Subdivision (j) of section 2 of the Agricultural Code provides that "sell" includes "offer for sale."

In the bids submitted to the five school districts defendant offered to sell fluid milk at the established minimum prices fixed by the Director of Agriculture and other dairy products at the prices stated therein. It is not contended by plaintiff that the sale of the fluid milk alone was in violation of the statute but that the other dairy products were sold below cost, resulting in the sale of the fluid milk at below cost. In an effort to prove that the other dairy products were offered for sale below cost in connection with the sale of fluid milk, plaintiff relies principally on the testimony of Fredolf Streetz, a cost distributor auditor employed by the Bureau of Milk Control of the Department of Agriculture, who testified as to cost studies and surveys of defendant's operations. He stated that the department made a cost analysis of defendant's operations for the period commencing January 1, 1956, through March 31, 1956; that the study included the defendant's costs with fluid milk and such related dairy products as buttermilk, chocolate milk, skim milk, heavy cream and ice cream packaged in three ounce cups; that the cost survey was based upon actual expenses of defendant as reflected in its books and records; that the cost of skim milk and butter fat were determined by using the state minimum prices applicable to purchasing skim and fat by distributors from producers and that the cost of other raw products were determined by using defendant's invoice prices; that the expenses as indicated in defendant's 1955 profit and loss statements were examined and any necessary upward or downward adjustments were

made. Streetz further testified that he arrived at a cost figure for the production of ice cream, skim milk and buttermilk and that these products were offered for sale by defendant at prices below said cost figure. When asked as to what basis "he allocated the expenses of defendant, other than production cost and labor, such as advertising, selling expenses, general administrative and those other indirect things," he replied, "The State has a set of modifiers that we apply to all products sold. They have a delivery labor modifier, they have a load and check modifier, which is a basis used to allocate loading out operations and cold room operations. They have a space modifier which is used to allocate truck expenses and they have a G and A modifier which is general and administrative expenses which cover all of the remaining indirect items." He further stated that they had a standard allowance for credit loss.

In this connection the record shows that when James B. Duffy, area supervisor for Southern California for the Bureau of Milk Control, was being questioned concerning the formula which was used by the milk control board for determining what it cost the defendant to produce certain by-products, stated that the cost auditor's manual that Mr. Streetz followed was the same one that is prescribed for use in fixing the minimum prices for fluid milk. The foregoing testimony indicates that Mr. Streetz' cost figures were based largely on modifiers and state-wide cost surveys.

Leonard B. West, vice-president of defendant corporation, an accountant by profession, formerly associated with Haskins and Sells and for many years the chief financial and accounting officer for defendant corporation, testified that his company did not sell any of their products at less than cost; that they had a cost breakdown by departments and the four departments were milk—butter, cheese and oleo—ice cream—and orange juice; that it is the policy of the company to try to price all of the items so that they will give a profit and that the company had never intentionally given any loss leaders; that he was not in accord with the prices used by Mr. Streetz for the basic mix on ice cream due to the decrease in butter fat content of milk furnished by the company; that Mr. Streetz did not make the proper allocation of general and administrative expenses and that the costs that he allocated were not the costs of the defendant company; that Streetz used modifiers, industry standards, and various additions, which were not Dairy Mart's costs. When asked if he

thought Dairy Mart's costs of furnishing dairy products to the county's schools are greater or less than furnishing such products to other customers, he replied:

"Dairy Mart's costs to the schools would be very much less than other customers due to things that have been mentioned before, that is, you have a stable amount, you know exactly how much you are going to produce, you do not have to have an added storage base, you do not have any credit losses, you have your regular time and amount of deliveries, so all those factors make for less cost to service school districts. Besides, you do not have a sales expense. After once contracting it, you do not have to call on them for sales reasons."

Mr. West further testified that the cost figures of Mr. Streetz did not and could not reflect the actual historic experience of the defendant corporation with respect to general and administrative expenses; that the defendant corporation, during the first three months of the current fiscal year, made a profit in all four categories in which he maintained cost records; that all of the men who work in the plant are what might be termed utility men, and that it is next to impossible to allocate the costs of any one employee to any one operation.

It clearly appears that there is a conflict in the evidence between the testimony of Mr. Streetz and Mr. West relating to the cost of dairy products other than fluid milk offered for sale by the defendant corporation. The question of whether these products were sold or offered for sale at less than cost was one of fact for the determination of the trial court, and we cannot here hold as a matter of law that there was no substantial evidence to support the trial court's finding in this connection.

The record shows that while the director prescribed the minimum prices at which fluid milk could be sold, there were no minimum prices established at which other dairy products could be sold or offered for sale. Plaintiff claims that these other dairy products were offered for sale in connection with the sale of fluid milk. However, there is substantial evidence that the bids of defendant were severable. In this connection Carroll B. Smith, Deputy County Counsel in San Diego, testified that for many years he had been legal adviser to various school districts in the county; that his office furnished the school districts with the forms of contract, bids and invitation for bids used by them, and that these forms contained the provision in their notice to bidders that "the district reserves the right to accept or reject any one or more items of the

bid or to waive any irregularities or infirmities in the bid or bidding.'' Mr. West testified that in bidding for the business with the county school districts it was not his understanding that the company was bidding on a unit basis and that ''each bid has always been submitted on the basis that they could take any part of it or all of it if they so saw fit, based on what you might call a severable bid in which they take any part or reject any part of it'' and that it is bid on the basis that each item should ''stand on its own two feet.''

Roy Relaford, sales manager for the defendant corporation, testified that he was the one who had the contacts with the county schools; that in preparing the bids and submitting them to the county school districts it was his opinion that the defendant corporation was bidding on separate items and that ''they have been accepted that way''; that on several occasions the defendant corporation had been awarded the business on one or part of the items and the balance of the items bid on were awarded to someone else.

There was no condition in the bids involved that they be in the aggregate and the court's implied findings that the bids were severable and that the evidence does not show a discount or a rebate or a free service or a gift to the school districts in order to sell them milk and cream, are supported by the evidence.

█ Plaintiff argues that a hearing under section 4175 of the Agricultural Code was not a condition precedent to the institution of this action. We agree with this contention. Section 4175 is found in chapter 16, division 6, of the Agricultural Code and relates to unfair practices in the marketing of milk and other dairy products. The instant proceedings are brought under the provisions of chapter 17 of said code, which relates to the stabilization and marketing of fluid milk and fluid cream, and this chapter does not provide for such a hearing.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.